**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**DURNELL'S RV SALES, INC.,** *et al.*,

    **Plaintiffs,**

    v.

**JEFF COUCH'S CAMPERS, LLC,**

    **Defendant.**

Case No. 1:22-cv-242
JUDGE DOUGLAS R. COLE

**OPINION AND ORDER**

Plaintiffs Durnell's RV Sales, Inc. and RV Wholesalers LLC claim they own the rights to, and use, the mark THE REAL RVWHOLESALERS in connection with selling recreational vehicles. Providing at least some support for that, the United States Patent and Trademark Office has in fact registered that mark to RV Wholesalers LLC. *See* Reg. No. 5615630. In this action, the two proceed against Defendant Jeff Couch's Campers, LLC, for trademark infringement based on Couch's use of a nearly identical mark—THE REAL RV WHOLESALERS. Couch, though, says it used that mark for *years* before Plaintiffs' claimed first use date. And in its Answer, Couch claims it has filed (or will file) a cancellation action before the Trademark Trial and Appeal Board challenging Plaintiffs' mark. Couch also asserts various affirmative defenses and counterclaims in this suit based on its allegedly superior rights in the mark. Among these is Counterclaim Four labeled simply "Fraud," but which Couch now clarifies is a claim for fraud on the trademark office in connection with Plaintiffs' efforts to register the mark.

The case is now before the Court because Plaintiffs have moved to dismiss Couch's fraud counterclaim. (Doc. 14). In particular, they say Couch has failed to state that claim with the specificity that Rule 9(b) requires. For the reasons discussed below, the Court agrees Couch has insufficiently pled this claim. Thus, the Court **GRANTS** Plaintiffs' Motion to Dismiss (Doc. 14) and **DISMISSES** Jeff Couch's Campers, LLC's Counterclaim Four **WITH PREJUDICE**.

## BACKGROUND

Plaintiffs Durnell's RV Sales, Inc. ("Durnell") and RV Wholesalers LLC ("RVW") sued Jeff Couch's Campers, LLC ("Couch"), asserting trademark infringement[1] and unfair competition based on Couch's use of Plaintiffs' registered mark THE REAL RVWHOLESALERS. (Compl., Doc. 6). Couch does not dispute that it uses a nearly identical mark, nor does Couch dispute that it uses that mark in competing with Plaintiffs (or at least with Durnell, the entity that actually sells RVs). Rather, Couch claims it has the earlier use in commerce in this geographic area and thus holds superior rights to the mark. (Answer and Countercl., Doc. 5).

So, the Court at this stage has two competing factual narratives before it. But as Couch (the defendant) resists the Motion to Dismiss (which is directed at Couch's Counterlaim Four), the Court for now accepts Couch's narrative over Durnell's and RVW's, to the extent that they differ, when reporting the factual background. The

---

[1] Although the Complaint labels the claim as "Federal Trademark Infringement" (Doc. 6, #69), the mark is registered (as further described below) in International Class 035, which applies to services, not goods. Consistent with that, the registration refers to the mark as a "Service Mark," not a "Trademark." (Doc. 6-1, #76). The distinction is not relevant to the Court's disposition. In this Opinion, the Court refers to it simply as the "mark."

2

Court's reliance on Couch's allegations, though, comes with the typical caveat that at this point they are just that, allegations.

Durnell, doing business as RVWholesalers, operates a dealership that sells and performs maintenance on recreational vehicles, commonly called RVs. (Doc. 5, #56). RVW, a holding company, does not directly sell RVs but is affiliated with Durnell. (*Id.*; Doc. 6, #65). Couch also operates a dealership that sells and performs maintenance on RVs. (Doc. 5, #56). All are in Ohio, within about 100 miles of each other (Doc. 5, #56; Doc. 6, #65), and Durnell competes with Couch for business (Doc. 25, #196).

All agree that RVW registered and purports to own the mark THE REAL RVWHOLESALERS, Reg. No. 5615630 ("the mark"). (Doc. 5, #56). RVW licenses the mark to Durnell for the latter's use in selling RVs. (*Id.*). RVW received its registration on November 27, 2018, from the United States Patent and Trademark Office ("USPTO"). (*Id.*). The registration specifies that the mark is registered in International Class 035, which generally applies to "advertising; business management; business administration; and office functions." *See Nice Agreement Tenth Edition - General Remarks, Class Headings and Explanatory Notes - Version 2012*, U.S. Patent & Trademark Office.[2] As applied here, RVW describes its field of use as "Dealerships in the field of Recreational Vehicles." (*See* Doc. 6-1, #76).

In its application for the mark, RVW attested: "The applicant is using the mark in commerce on or in connection with the identified goods/services" and that "the

---

[2] Available at https://www.uspto.gov/trademarks/trademark-updates-and-announcements/nice-agreement-tenth-edition-general-remarks-class (last visited 1/22/2022).

3

mark was first used by the applicant or the applicant's related company … at least as early as 10/24/2017."[3] (Doc. 20, #165). But all agree that RVW itself has never used the mark in commerce—only Durnell has. (Doc. 5, #56–57). RVW is a holding company with no operations. (*Id.* at #56). That said, Durnell uses the mark in a manner consistent with registration in International Class 035. (*See id.* at #56–57).

Couch alleges it began using the phrase "THE REAL RV WHOLESALERS" on Google Ads starting in 2013. (*Id.* at #56). (The only apparent difference between RVW's and Couch's use is the space between "RV" and "WHOLESALERS.") Although Couch never sought registration, Couch argues that its prior use created superior rights to THE REAL RVWHOLESALERS mark that RVW later registered and licensed to Durnell. (*Id.*). Couch further asserts that it has filed, or "will shortly file," a proceeding before the Trademark Trial and Appeal Board ("TTAB") seeking cancellation of Plaintiffs' mark.[4] (*Id.* at #53).

On January 19, 2022, Durnell and RVW sued Couch in state court for trademark infringement, unfair competition, and deceptive trade practices under both federal and state law. (Doc. 6). Couch removed to federal court.[5] (Doc. 1). The

---

[3] The Court takes judicial notice of the contents of RVW's application to register the mark. *Moran v. Edie Parker, LLC*, 563 F. Supp. 3d 671, 677 (E.D. Mich. 2021) (recognizing that courts can take judicial notice of USPTO filings).

[4] While Couch made that assertion on March 11, 2022, a search of the TTAB proceedings database reveals no pending or terminated TTAB proceeding involving Reg. No. 5615630. *See Trademark Trial and Appeal Board Inquiry System*, U.S. Patent & Trademark Office, https://ttabvue.uspto.gov/ttabvue/ (last visited 1/16/23).

[5] The action was originally removed to the Western Division of the Southern District of Ohio. But, because the Logan County Court of Common Pleas is located in the Eastern Division of the Southern District of Ohio, the Clerk transferred the matter there. (*See* 3/11/22 Docket Entry). Couch moved for an intra-district transfer back to this Division, noting that both

4

next day, Couch answered, asserting a host of affirmative defenses along with four counterclaims. Counterclaim Four, the claim at issue, is labeled "Fraud." (Doc. 5, #60–61). In this counterclaim, Couch alleges Plaintiffs failed to disclose certain materials facts to the USPTO and did so with the "inten[t] to procure a registration to which it was not entitled." (*Id.* at #61). That said, the "Fraud" claim did not refer to a statute, nor did it say whether it proceeded under state or federal law.

On April 15, 2022, Plaintiffs moved to dismiss Counterclaim Four. (Doc. 14). Treating Couch's counterclaim as a state-law fraud claim, Plaintiffs argued Couch had not stated a claim upon which relief could be granted under Ohio law. (*Id.* at #119–20). That was so, Plaintiffs said, because an Ohio-law fraud claim requires a statement from the defendant *to the plaintiff*. (*Id.*). Here, Couch instead relied on alleged statements to a third party (the USPTO). (*Id.*).

In a terse three-page Response, Couch clarified that Counterclaim Four proceeded, not under state law, but under Section 38 of the Lanham Act, 15 U.S.C. § 1120. (Doc. 19). And, according to Couch, Plaintiffs' failure to divine the basis for Couch's cause of action meant the Motion to Dismiss failed outright:

> Since Plaintiffs' Motion did not make any claim that Defendant failed to properly plead fraud on the Trademark Office [under 15 U.S.C. § 1120], it is not necessary for Defendant to establish that it met the elements for a claim of fraud on the Trademark Office. Plaintiffs' Motion and argument never set out a legal claim that was sufficient to require Defendant to rebut.

---

businesses operate here. (Doc. 10). The Eastern Division judge granted that motion over Plaintiffs' opposition. (*See* 5/3/22 Order, Doc. 16). Accordingly, the case is again pending here.

(*Id.* at #142). Couch then argued it had adequately pled the necessary elements for its federal-law fraud claim anyway. (*Id.* at #142–43).

Plaintiffs' Reply did not see things quite that way. (Doc. 20, #145). First, Plaintiffs argued that Couch's ambiguous invocation in its pleading of the legal basis for its claim (federal versus state law) meant that Couch had failed to meet notice pleading standards as to Counterclaim Four. (*Id.*). Next, Plaintiffs argued that, in any event, Couch's fraud counterclaim did not adequately allege fraud on the trademark office under federal law given the heightened pleadings standards Federal Rule of Civil Procedure 9(b) imposes. (*Id.* at #148–58).

Couch responded by crying foul. Although the confusion as to the counterclaim's legal basis was, at least arguably, of Couch's own making, Couch asked the Court to strike Plaintiffs' Reply for raising "novel" arguments (those addressing the federal-law fraud claim). (Doc. 22). In the alternative, Couch requested the opportunity to file a Surreply. (*Id.*). On December 8, 2022, the Court denied the Motion to Strike, but given that the parties had only now engaged on the merits of the claim at issue, the Court allowed Couch to file its Surreply. (12/8/22 Not. Order). In that Surreply, Couch argues it met notice pleading standards and alleged sufficient facts to state a plausible fraudulent procurement claim against Plaintiffs. (Doc. 25). The matter is now ripe.

## STANDARD OF REVIEW

Plaintiffs have moved to dismiss Couch's fraud counterclaim under Rule 12(b)(6). This requires the Court to consider whether Couch has "fail[ed] to state a

claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In making that determination, the Court must "construe [Couch's Counterclaim] in the light most favorable to [Couch], accept its allegations as true, and draw all reasonable inferences in [its] favor." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (internal quotation marks omitted). That is so, however, only as to well-pled factual allegations. The Court need not accept "'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (brackets omitted) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Likewise, the Court need not accept as true any legal conclusions alleged in Couch's counterclaim; "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice. *Id.*

At the pleadings stage, a claim must "state[] a claim for relief that is plausible, when measured against the elements" of a claim. *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citing *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016)). "To survive a motion to dismiss, in other words, [Couch] must make sufficient factual allegations that, taken as true, raise the likelihood of a legal claim that is more than possible, but indeed plausible." *Id.* (citations omitted). In sum, the well-pled facts must be sufficient to "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, such that the asserted claim is "plausible on its face." *Iqbal*, 556 U.S. at 678.

Under the *Iqbal*/*Twombly* plausibility standard, courts play an important gatekeeper role, ensuring that claims meet a threshold level of factual plausibility

7

before defendants endure the potential rigors (and costs) of the discovery process. Parties engage in discovery not to determine whether a claim exists, but to gather evidence for an already plausibly stated claim. *Green v. Mason*, 504 F. Supp. 3d 813, 827 (S.D. Ohio 2020).

## LAW AND ANALYSIS

Couch asserts that Plaintiffs committed fraud on the trademark office under Section 38 of the Lanham Act. 15 U.S.C. § 1120. To prevail on this claim, Couch ultimately must show that one or both Plaintiffs: (1) made a false or fraudulent representation of a material fact to the USPTO in securing the mark; (2) knew or believed that this representation was false; and (3) intended to induce the USPTO to rely on this misrepresentation; Couch must also show (4) the USPTO reasonably relied on the misrepresentation, and that (5) Couch's damages were proximately caused by Plaintiffs' misrepresentation. *See id.*; *Brenton Prod. Enters., Inc. v. Motion Media*, No. 96-6044, 1997 WL 603412, at *3 (6th Cir. Sept. 30, 1997); *San Juan Prods., Inc. v. San Juan Pools of Kan., Inc.*, 849 F.2d 468, 472 (10th Cir. 1988).

Typically, at the motion-to-dismiss stage, Couch need only plead sufficient facts to create a plausible inference it can eventually prove all five elements. *See* Fed R. Civ. P. 8(a). But as Couch concedes, Rule 9(b)'s heightened pleadings standards also apply to its fraud claim. (Doc. 25, #194). Couch must "state with particularity the

circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

That said, Couch's fraud counterclaim cannot even meet Rule 8(a)'s general pleading requirements, rendering Rule 9(b) largely irrelevant. Specifically, Couch has not plausibly alleged (1) that either Durnell or RVW made a material false or fraudulent statement to the USPTO, or (2) that Couch has suffered damages caused by Plaintiffs' allegedly fraudulent registration. So, as discussed below, the Court **GRANTS** Plaintiffs' Motion to Dismiss Couch's Counterclaim Four. (Doc. 14).

### A. Couch Has Not Alleged Plaintiffs Made A Material False Or Fraudulent Statement To The USPTO.

As with any fraud allegation, a Section 38 claimant must first identify a material false or fraudulent statement the charged party made to the USPTO. Couch's first problem in that regard is that it does not allege Durnell applied for or owns any trademark. (Doc. 5, #56). Couch's fraud allegations all center on RVW's trademark application (*id.* at #60–61), and Couch does not identify any statement Durnell allegedly made to the USPTO in that application. Thus, Couch has not plausibly stated a Section 38 claim against Durnell.

That leaves RVW. Couch alleges RVW misrepresented to the USPTO that RVW itself operated in "the business of 'Dealerships in the field of Recreational Vehicles'" in order to register the mark. (Doc. 5, #60). To support that, Couch notes that RVW has never "used" the mark. (*Id.* at #60–61). Rather, when RVW registered the mark, RVW only "used" the mark by licensing it to Durnell for Durnell's use, an arrangement RVW planned to continue following registration. (*Id.*). Despite that,

9

RVW attested to the USPTO "*[t]he applicant* is using the mark in commerce on or in connection with the identified goods/services." (Doc. 20, #165 (emphasis added)). Couch says that is a material misrepresentation.

As further evidence of RVW's fraudulent intent, Couch points out that RVW registered the mark in International Class 035 (encompassing recreational vehicle dealerships), rather than International Class 045 (encompassing licensing of intellectual property). (Doc. 5, #57). In other words, Couch argues that, by applying for Class 035, RVW misrepresented the use to which *RVW* had (and had intended to) put the mark—which would be Class 045, as it only licensed the mark to Durnell.[6]

Neither argument works. Start with the alleged misrepresentation about which entity used the mark. Under the Lanham Act, *Durnell's* use, as licensee, allows RVW, as licensor, to register the mark based on that use. *See* 15 U.S.C. § 1055; *Ausable River Trading Post, LLC v. Dovetail Solutions, Inc.*, 902 F.3d 567, 572 (6th Cir. 2018) ("Ownership rights in a trademark or service mark can be acquired and maintained through the use of the mark by a controlled licensee even when the first and only use of the mark was made, and is being made, by the licensee." (quoting 2 *McCarthy on Trademarks and Unfair Competition* §18:46 (4th ed. 2018))); *Turner v. HMH Pub. Co.*, 380 F.2d 224, 229 (5th Cir. 1967) ("[T]he Lanham Act definitely

---

[6] In its Surreply, Couch attaches exhibits detailing RVW's prior unsuccessful attempts to register the mark in International Class 012. (*See* Docs. 25-1, 25-2, 25-3, 25-4). But these exhibits carry little persuasive weight. The USPTO denied these attempts, so any contained misrepresentations cannot have been relied upon by the USPTO to cause subsequent injury to Couch. Moreover, these prior attempts cannot evidence an intent to deceive during the successful registration because, for the reasons discussed, RVW was entitled to register the mark in International Class 035.

10

contemplates that a trade or service mark may be acquired through its use by controlled licensees, even though the registrant itself may not have used the mark."). Indeed, RVW's application specifically attested that "the mark was first used by the applicant *or the applicant's related company* … at least as early as 10/24/2017." (Doc. 20, #165 (emphasis added)).

To be sure, RVW's application also attests "[t]he applicant is using the mark in commerce on or in connection with the identified goods/services." (*Id.*). But even assuming RVW should have more clearly declared that only Durnell directly used the mark (a debatable proposition), this mischaracterization would not be material. As a general matter, a misreprentation is material "only if the registration should not have issued if the truth were known to the examiner." *See San Juan*, 849 F.2d at 473 (quoting 2 *McCarthy* § 31:21). Here, RVW still could have registered the mark even had it provide a more complete description.[7]

Couch's remaining allegation, relating to the International Class RVW identified in its application, fares no better. That is because RVW registered the mark in the correct International Class. All agree Durnell used the mark in connection with services it provide as a "Dealership[] in the field of Recreational Vehicles," and such use properly falls in International Class 035. So, as a matter of undisputed fact on

---

[7] True, "[a] licensor … is required to exercise some degree of control over the use of the mark by the licensee, at the risk of abandonment of the mark." *Hawaii-Pacific Apparel Grp., Inc. v. Cleveland Browns Football Co. LLC*, 418 F. Supp. 2d 501, 506 (S.D.N.Y. 2006). But Couch never argues Durnell used the mark in a manner that caused RVW to abandon its rights. Indeed, the crux of Couch's argument is that RVW and Durnell worked hand-in-hand to defraud the USPTO. (Doc. 25, #195).

11

the allegations here, RVW properly registered the mark in a class reflecting its actual use in commerce.[8]

Couch responds that Durnell (doing business as RVWholesalers) and RVW (full name RV Wholesalers LLC) employed similar trade names to intentionally "blur the identity of the owner of RVW's trademark on its trademark application." (Doc. 25, #195). But the mark's "owner" is clear in both the application materials and Couch's allegations—RVW owns the mark. That Durnell used and still uses the mark as a licensee changes nothing.

In a final effort, Couch attempts to evade the strictures of Rule 9(b) (which is the basis of Plaintiffs' motion). (Doc. 25, #195–96). Couch claims it is free to allege Plaintiffs' fraud on "upon information and belief," rather than with particularity, because the relevant facts "lie exclusively within the knowledge and control of the opposing party." (*Id.* (quoting *Wilkins ex rel. United States v. Ohio*, 885 F. Supp. 1055, 1061 (S.D. Ohio 1995))). But that argument matters little here. Counterclaim Four falls short even when measured against Rule 8(a), which still requires a claimant to allege facts establishing a plausible claim. Here, all Couch alleges is that RVW registered the mark based on a licensee's first use (and the nature of that use). That is permissible. Thus, even under Rule 8(a)'s lesser standards, Couch has not plausibly alleged any material misrepresentation.

---

[8] Couch appears to misunderstand the boundaries of International Class 045. Licensing a trademark to another, by itself, does not make it fall within Class 045. Instead, Class 045, among other things, includes trademarks used to *market* the licensing of other intellectual property. *See, e.g.*, *Gioconda Law Grp. PLLC v. Kenzie*, 941 F. Supp. 3d 424, 429 (S.D.N.Y. 2013).

### B. Couch Has Not Sufficiently Alleged Damages Or Causation.

Separately, to state a claim under Section 38, Couch also must allege (1) an injury resulting in damages, and (2) that the misrepresentation caused those damages. *Jaguar Land Rover Ltd. v. Bombardier Recreational Prod., Inc.*, No. 16-cv-13386, 2017 WL 2472851, at *2 (E.D. Mich. June 8, 2017); *Fenwick v. Dukhman*, No. 13-4359, 2015 WL 1307382, at *4 (D.N.J. Mar. 20, 2015) ("[T]he injury asserted under § 1120 must be a 'direct' and 'proximate' result of the alleged false registration."). In Section 38 pleadings, the claimant's injury and damages must be "clearly articulated." 6 *McCarthy* § 31:85 (5th ed. 2022) (citing *Jackson v. Lynley Designs, Inc.*, 729 F. Supp. 498 (E.D. La. 1990)). "Generalized or 'speculative' damages assertions are not enough." *Fenwick*, 2015 WL 1307382, at *4. Here, Couch falls short of this clear-articulation requirement.

Damages can encompass diminished sales from lost product markets, increased expenses to work around the fraudulently registered mark, or quantifiable reputational harm incurred from the defendant's fraudulent registration. *See GMA Accessories, Inc. v. Idea Nuova, Inc.*, 157 F. Supp. 2d 234, 243 (S.D.N.Y. 2000) (dismissing because claimant had "not even made the conclusory allegation that it lost sales"); *Oatly AB v. D's Naturals LLC*, No. 1:17-cv-840, 2018 WL 3496386, at *6 (S.D. Ohio July 20, 2018), *report and recommendation*, 2018 WL 4625553 (S.D. Ohio Sept. 27, 2018) (finding lost sales a plausible injury); *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, No. 3:03-cv-93, 2007 WL 4292392, at *5 (W.D. Ky. Dec. 6, 2007) ("[T]he Cuervo entities' damage is the 'additional manpower and costs' to 'cease use of freeform wax seal.'"); *Santander Consumer USA Inc. v. Walsh*, 762 F. Supp. 2d 217,

234–35 (D. Ma. 2010) (recognizing reputational harm where claimant lost investors); *Professional's Choice Sports Med. Prods., Inc. v. Eurow & O'Reilly Corp.*, No. 13-cv-1484, 2014 WL 524007, at *10 (S.D. Cal. Feb. 10, 2014) (acknowledging injury can include "lost market share, sales decline, and damage to reputation, caused by the assertion or use of the fraudulently procured registration").

Couch's Section 38 claim alleges none of these. It does not offer even a conclusory allegation of lost sales, costs incurred, or reputational harm as a result of the allegedly fraudulent registration. Instead, the claim's entire allegation of damages and causation reads: "As a direct and proximate result of RVW's actions, it has been damaged and will continue to be damaged in an amount to be proven at trial." (Doc. 5, #61). This is a bare legal conclusion, which the Court should, and does, disregard. *Iqbal*, 556 U.S. at 678 (2009).

To be sure, Couch's prayer for relief demands monetary damages including "[a]ll profits received from Durnell and RVW from sales and revenues of any kind made as a result of their actions, and all damages sustained by [C]ouch as a result of Durnell and RVW's actions," along with costs. (Doc. 5, #62). And Couch separately seeks to enjoin Plaintiffs from "[i]njuring Couch's business reputation and goodwill." (*Id.*). But demanding relief differs from alleging an injury, damages, or causation. *See Gifford v. United States*, No. 18-13344, 2018 WL 6728416, at *4 n.5 (E.D. Mich. Nov. 6, 2018) ("[T]he demand for judgment is not part of the claim for purposes of testing a pleading's sufficiency." (citing 5 C. Wright & A. Miller, *Federal Practice and Procedures* § 1255 (4th ed. 2004)).

14

Indeed, even in its briefing, Couch still declines to identify any injury, damages, or causation resulting from the alleged fraud. That is so even though Plaintiffs' Reply raised the issue by directly and specifically highlighting Couch's failure to allege damages or causation. (Doc. 20, #157–58). In fact, Couch's Surreply acknowledged that Plaintiffs made these arguments. (*See* Doc. 25, #194). But the Surreply never mentions the topics again, let alone offers any response. (*See generally id.*). In short, Couch has not "clearly articulated"—indeed has not even attempted to articulate—any injury caused by RVW's alleged fraudulent procurement of the mark.

Moreover, given that Plaintiffs raised the issue, and Couch acknowledged as much but declined to respond, the Court can only conclude that Couch has nothing to offer on that front. Nor is that altogether surprising. Couch's attorneys' fees, for example, are likely not recoverable "damages" for fraud on the USPTO. *GMA Accessories*, 157 F. Supp. 2d at 243 ("[A]ttorneys' fees are ordinarily not recoverable under § 38."); *Jaguar Land Rover*, 2017 WL 2472851, at *2 n.2; *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 344 F. Supp. 3d 1147, 1162 (S.D. Cal. 2018) ("Other circuit courts have concluded that because section 38 was not amended by Congress, attorney's fees under section 38 are barred.") (citing cases). But more to the point, it appears Couch's actual concern is that Couch believes it is the senior user and thus holds superior rights in the mark. That could be true—that's an issue for another day—but Couch's fraudulent procurement claim does little to move the needle on that issue.[9]

---

[9] Fraud is one basis on which a challenger can pursue cancellation of a mark outside the otherwise applicable five-year lookback that typically applies to such actions. *See* 15 U.S.C.

In any event, given Couch's failure to allege (or even identify in briefing) any damages caused by the alleged fraud, the Court dismisses Couch's Fraud Counterclaim with prejudice.[10]

## CONCLUSION

For the reasons discussed, the Court **GRANTS** Plaintiffs' Motion to Dismiss (Doc. 14) and **DISMISSES** Jeff Couch's Campers, LLC's Counterclaim Four **WITH PREJUDICE**. All other claims and counterclaims proceed unaffected.

**SO ORDERED.**

January 27, 2023
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

---

§ 1064. So, perhaps Couch asserts fraud in aid of its cancellation efforts. But here, RVW secured its registration in November 2018. Thus, Couch presumably would have until November 2023 to initiate a cancellation proceeding without need to rely on alleged fraud to escape the five-year limit.

[10] The Court further questions whether Couch has plausibly alleged fraudulent intent, another required element of its claim. Given the Court's findings that Couch failed to plausibly allege either a material false statement or damages caused by the registration, however, the Court does not reach that issue.